In the Matter of PHILIP MARTIN and Another, Petitioners.

Supreme Court, Onondaga County, May —, 1931.

*Hitchcock, Stevens, Alvord & Foertch* [*Clarence J. Foertch* of counsel], for the petitioners.

*Frank P. Malpass, Corporation Counsel* [*Arthur M. Beach* of counsel], for the respondent.

Ross, Official Referee. This proceeding is brought pursuant to the provisions of chapter 75 of the Laws of 1906, for the purpose of vacating an assessment made against lot 25, block 119, of the city of Syracuse, which assessment was made to defray the expenses of paving Mary street.

On April 23, 1928, the common council of the city of Syracuse passed an ordinance, which was duly signed by the mayor of said city, declaring its intention to take certain lands for the purpose of widening Mary street from Strand place to Carbon street. Such act was pursuant to the provisions of section 2 of chapter 415 of the Laws of 1916, amending section 19 of chapter 684 of the Laws of 1905, as amended, which provisions empowered the common council to annually order a certain amount of paving without petition or consent of the owners of property affected thereby, the expense of which paving was " to be assessed *pro rata* per lineal foot of frontage upon the property fronting upon the street or part thereof in or upon which such improvement is made."

An ordinance passed by the common council on May 27, 1929, provided for the paving of Mary street from Lodi to Carbon, and directed that " the costs thereof should be assessed upon the premises fronting upon said street."

The width of said street is not specified. The claim of the petitioners is that the city has purchased a strip of land 3 feet in width and 115.33 in length not necessary and in fact not required by the plan of the street, and that it cannot by such purchase

impose a burden upon petitioners' property upon the theory that petitioners' property abuts upon the street.

The inequality in the width of the strip was caused by the fact that the purchase of lot 26 by the city, being the lot between lot 25, owned by petitioners, and Mary street, included three feet of land more than was embraced in the original plan for the widening of Mary street.

It is the claim of the petitioners that, if the title to the strip in question remained in the original owner, petitioners would neither have a frontage upon the street nor a right of access thereto, and that such situation is not legally changed by the fact that the city is the owner of said strip.

The learned counsel for the petitioners in his brief and upon the trial seems to interpret the statute (Laws of 1916, chap. 415, § 2), amending section 19 of chapter 684 of the Laws of 1905, as though it read, " fronting upon the improvement," and not as it in fact reads, " fronting upon the street."

In the case of a pavement which did not extend the entire width of a street or in the case of a sewer (Laws of 1905, chap. 684, § 14), such frontage, i. e., upon the improvement, would be physically impossible.

The physical connection between the frontage on the street of the property to be assessed and the actual improvement must be apparent and reasonable. The city cannot by purchase or condemnation or previous ownership extend the area of assessment indefinitely.

If the city had only purchased so much of lot 26 as exactly corresponded with the street as laid out, leaving a strip of three feet belonging to the former owners extending the entire distance of the length of petitioners' lot, the contention of the petitioners would present serious obstacles to the enforcement of the proposed assessment, but, under the conditions existing, I think that the contention of the petitioners cannot be sustained for the reasons hereinafter set forth.

The contention is contrary to the spirit and purpose of the provisions for placing the burden of the expense of local improvements upon the land primarily benefited.

It must be admitted that a city must from time to time lay out, pave and improve its streets. In general I know of only three methods whereby the cost of such improvements can be met, to wit: A general tax upon the entire property of the city; an area tax upon the sphere or area supposedly specially benefited, as, for instance, in the case of a sewer; third, by a local tax on the properties supposed to be benefited. The last-named method has

been generally adopted to cover the original cost of paving, it being generally assumed that the property immediately adjacent to the improvement is the property presumably benefited.

It may be conceded that frequently this benefit is not apparent. There are instances in which the proposed improvement is an actual damage, but we should be slow in any case in arriving at this conclusion, for the benefits are frequently not manifestly apparent. They may result in being part of the general progress and improvement of a city as a whole, making it a better place in which to live and more attractive, and consequently increasing its population and enhancing the value of all property therein. In any event, it would seem inequitable to levy any part of the cost of paving Mary street upon the owners of property in the outlying sections of the city miles away from the property in question, and in many instances would be levied upon people who never saw or traveled upon Mary street.

I also assign as a reason for denying petitioners' application to set aside the assessment in suit the fact that the city of Syracuse by dedication appropriated the strip in question for the purposes of a street.

" Dedication is the appropriation or gift by the owner of land, or of an easement therein, for the use of the public."

" The doctrine of dedication rests upon public convenience and has been sanctioned by the experience of ages; it is based upon public policy and good faith, in that while securing to the public only such rights as it has honestly enjoyed or learned to depend on, it takes from the land owner nothing that he did not intend to give."   (18 C. J. 38.)

" Time  *  *  *  although  *  *  *  material  *  *  *  is not indispensable."   (18 C. J. 52; *Cook* v. *Harris*, 61 N. Y. 448, 453, 454; *City of Cohoes* v. *President, etc., Delaware & H. Canal Co.*, 134 id. 397, on p. 402, in which Mr. Justice VANN writes in part as follows: " By dedication through offer and actual acceptance, or where the owner throws open his land, and by acts or words invites acceptance of the same for a highway, and the public authorities, in charge of the subject, formally, or in terms accept it as a highway.")

Dedication may by unequivocal acts take place immediately. (*Hunter* v. *Trustees of Village of Sandy Hill*, 6 Hill, 407; *Palmer* v. *East River Gas Co.*, 115 App. Div. 677.)

Dedications have been established in every conceivable way by which the intent of the dedicator could be evinced.   (18 C. J. 55.)

An acceptance may be actual or constructive, express or implied. (18 C. J. 77, 78; *Matter of Hunter*, 164 N. Y. 365.)

That there has been a dedication of the three-foot strip for the purposes of a highway is evidenced by the several ordinances passed by the common council of the city of Syracuse relative to the purchase of property to widen Mary street, and also by the ordinance authorizing the purchase of lot 26, being the premises between petitioners' lot 25 and Mary street, also by the enactment of the ordinance of December 1, 1930, approving the assessment roll No. 2472 for paving Mary street, which ordinance contains with other matters the following: " Be it ordained that it was and is the intention of this Common Council to use said lots acquired for widening Mary Street to the easterly lot line of lot 25, block 118, owned by Philip Martin and Mary Martin his wife as aforesaid." The owners are the petitioners in this proceeding.

The ordinance last referred to was passed subsequently to the assessment, but is relevant upon the question of dedication.

Also the evidence of the witness Francis J. Saunders, city engineer, as to what was done after the pavement was laid (S. M. pp. 98, 99, 100): "After the pavement was laid the sidewalk was constructed parallel to the curb and from the sidewalk back to the top of the slope that existed on lot 25 the land was graded and sodded.

" Q. So that there was grading done by the city to the easterly line of lot 25, the petitioners' lot? A. As far as the fence extended that was true. As the slope went towards Strand Place it was not up as high as it was in the rear of the line and the grading and sodding might not have extended clear to the line of lot 25. That is more or less indefinite but for the last half of the lot the grading and sodding west to the line of 25 or the fence line."

As to the power of the city of Syracuse to dedicate the strip in question to the public for the purpose of a highway it may be stated as a general rule that any person or corporation capable of making a grant has capacity to dedicate. The title remains in form in the city of Syracuse, but limited to its use as a street. The city of Syracuse is incapable of selling or using it for any other purpose than a street.

In a recent article by Chief Judge CARDOZO in honor of the ninetieth birthday of Mr. Justice OLIVER WENDELL HOLMES, JR., quoting from the Common Law written by Mr. Justice HOLMES half a century before, he quotes as follows: " The life of the law has not been logic: it has been experience  *  *  *. The law embodies the story of a nation's development through many centuries and it cannot be dealt with as if it contained only the axioms and corollaries of a book of mathematics." (44 Harvard L. Rev. pp. 682, 683.)

We are dealing with the problems of the development and govern-

ment of a progressive city. Material progress is essential to the welfare and happiness of a city. Our local laws are enacted from time to time to meet new conditions, and are enacted and executed, not by students of the law, but by practical men of affairs for the purpose of obtaining results, and we cannot deal with these material problems which daily arise, as Mr. Justice HOLMES said fifty years ago, as though we were solving a problem of mathematics.

Motion to set aside the assessment denied; but I think that the question raised by petitioners in this proceeding is of sufficient moment to justify their submission of the same to the court, and that they should not be compelled to pay costs. Motion denied, without costs.